DECISION AND JUDGMENT ENTRY
{¶ 1} This case involves a boundary dispute between adjacent landowners. Kay Fancher contends the trial court's judgment in favor of Stuart and Donna Bugg is against the manifest weight of the evidence. The trial court relied upon the testimony presented by the Buggs' two surveyors and the previous owner of the tracts to establish the location of the boundary line. While Fancher presented some evidence that would support a different location, the trial court was free to choose which version of the facts it found to be more credible. Because the trial court's judgment is based upon some competent, credible evidence, we overrule Fancher's first contention.
 {¶ 2} Second, Fancher contends that the trial court's decision is contrary to law because it failed to apply the general rule of primacy in determining *Page 2 
boundary disputes, i.e., that monuments prevail over courses and distances when establishing the disputed location of a boundary line through resurvey. Because Fancher failed to request findings of fact and conclusions of law, we presume the trial court applied the appropriate law in the absence of something contrary in the record. Moreover, while tangible landmarks generally prevail over courses and distances, this is not an absolute rule. The law permits a fact-finder to use the call for course and distance rather than the call for monuments when the facts and circumstances indicate that method to be more reliable than monuments.
 I. Facts {¶ 3} The Buggs own approximately 108 acres of land bordering the east side of Fancher's 57 acres. Thus, the property line in dispute forms the eastern boundary of Fancher's property and the western boundary of the Buggs' property. A creek and a fence run along this property line.
 {¶ 4} At one time Ken Juillerat owned the entire parcel that now is held as two separate tracts by the Buggs and Fancher. At trial, Juillerat testified that he subdivided his land and sold part of it to Fancher in 1983. At the time, he believed the property he sold to Fancher consisted of approximately 75 acres, but it was later determined to be closer to 57 acres. Juillerat testified that he sold the remaining 108 acre tract to Mr. Mefford in 1986. Mr. Mefford then sold the property to the Buggs. Juillerat also testified that when he sold the portion of his property to Fancher, the parties did not survey the land. However, he testified that he intended for the property's eastern boundary to follow along the existing *Page 3 
fence line located to the west of the creek because he did not want to build a new fence on the east side of the creek for his remaining property. He further testified that Fancher never indicated she was interested in the creek nor did she want it included in her property.
 {¶ 5} The Buggs offered testimony from two separate surveyors, Eric Lutz and Ty Pell. Both men testified that they conducted surveys for the Buggs and concluded that the Buggs' western property line closely follows the fence line, and includes the creek. Fancher offered the testimony of her surveyor, Raymond Roberts, who concluded that Fancher's eastern property line was located east of the creek, and included the creek and fence.
 {¶ 6} The trial court concluded the Buggs proved by clear and convincing evidence that the boundary line of their property follows the fence and includes the creek.
 {¶ 7} In her pro se appellate brief, Fancher asserts the following assignments of error:
 I. THE JUDGMENT AND FINAL ORDER IS NOT SUSTAINED BY THE EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 II. THE JUDGMENT AND FINAL ORDER IS CONTRARY TO LAW.
 II. Manifest Weight {¶ 8} In her first assignment of error, Fancher contends that the trial court's judgment is against the manifest weight of the evidence.
 {¶ 9} An appellate court will not reverse a trial court's judgment so long as it is supported by any competent, credible evidence going to all of the *Page 4 
essential elements of the case. CE. Morris Constr. Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, 280, 376 N.E.2d 578. Under this highly deferential standard of review, a reviewing court does not decide whether it would have come to the same conclusion as the trial court. Rather, we are required to uphold the judgment so long as the record, as a whole, contains some evidence from which the trier of fact could have reached its ultimate factual conclusions. We are guided by the presumption that the trial court's factual findings are correct because the trial judge "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77, 79, 461 N.E.2d 1273. In applying the "some competent credible evidence" standard, we should not reverse a judgment merely because the record contains evidence that could reasonably support a different conclusion. It is the trier of fact's role to determine what evidence is the most credible and convincing. The fact finder is charged with the duty of choosing between two competing versions of events, both of which are plausible and have some factual support. Our role is simply to insure the decision is based upon reason and fact. We do not second guess a decision that has some basis in these two factors, even if we might see matters differently. Rather, we must defer to the trier of fact in that situation.
 {¶ 10} Initially, we note that appellant failed to request findings of fact and conclusions of law under Civ.R. 52. In the absence of findings of fact and conclusions of law, the reviewing court must presume the trial court applied the *Page 5 
law correctly and must affirm if there is some evidence in the record to support the judgment. See Allstate Financial Corp. v. Westfield Serv.Mgt. Co. (1989), 62 Ohio App.3d 657, 577 N.E.2d 383. See also Pettit v.Pettit (1988), 55 Ohio App.3d 128, 130, 562 N.E.2d 929, 931, where the court wrote:
 We conclude that when separate facts are not requested by counsel and/or supplied by the court the challenger is not entitled to be elevated to a position superior to that he would have enjoyed had he made his request. Thus, if from an examination of the record as a whole in the trial court there is some evidence from which the court could have reached the ultimate conclusions of fact which are consistent with his judgment the appellate court is bound to affirm on the weight and sufficiency of the evidence.
 The message is clear: If a party wishes to challenge the * * * judgment as being against the manifest weight of the evidence he had best secure separate findings of fact and conclusions of law. Otherwise his already `uphill' burden of demonstrating error becomes an almost insurmountable `mountain.'
See, also, International Converter, Inc. v. Ohio Valley Converting,Ltd. (May 26, 1995), Washington App. No. 93CA34, 1995 WL 329571.
 {¶ 11} At trial, the Buggs presented the testimony of two separate surveyors. Each one presented their surveys of the properties and concluded that the boundary line between the Buggs' and Fancher's property lie near the fence line. Both surveyors believed that the Buggs' property included the creek and extended west to the fence line.
 {¶ 12} Additionally, the Buggs presented the testimony of Juillerat, the former owner of both tracts. He testified that when he partitioned the land and sold a portion to Fancher, he and Fancher intended for the property line to follow the existing fence line. Jullierat testified he walked the property with Fancher *Page 6 
before he sold it to her and he pointed out stakes that marked the boundary. Fancher indicated she understood where her boundary would be.
 {¶ 13} Under a manifest weight of the evidence standard, the surveyors' and Juillerat's testimony constitutes some competent, credible evidence to support the trial court's judgment. It is not our role to "second guess" the trial court when it chooses between two competing but rational versions of the facts. Even though Fancher's expert reached a different conclusion, the trial court's judgment is supported by some competent, credible evidence. Accordingly, we overrule Fancher's first assignment of error.
 II. The Role of Monuments {¶ 14} In her second assignment of error, Fancher contends that the trial court's decision is contrary to law. She argues that the court erred by not applying the general rule that monuments prevail over courses and distances when establishing the location of a disputed boundary line through resurvey. See Broadsworth v. Kauer (1954),161 Ohio St. 524, 120 N.E.2d 111.
 {¶ 15} Again, we note that because of Fancher's failure to request findings of fact and conclusions of law, we must presume regularity in the proceedings below and affirm unless there is some affirmative evidence in the record that the trial court misapplied the law.
 {¶ 16} Based upon her surveyor's testimony, Fancher contends that the stone located on the east bank of the creek constitutes a monument, which represents the starting point for her boundary line. According to her expert, use of this monument established the line in Fancher's favor. *Page 7 
 {¶ 17} When determining boundary disputes, monuments are of prime importance. Broadsword, 161 Ohio St. at 533. The general rule is that:
 A `monument' is a tangible landmark, and monuments, as a general rule, prevail over courses and distances for the purposes of determining the location of a boundary, even though this means either the shortening or lengthening of distance, unless the result would be absurd and one clearly not intended, or all of the facts and circumstances show that the call for course and distance is more reliable than the call for monuments.
Id. at 533-534, 120 N.E.2d 111, 116, quoting 6 Thompson on Real Property (Perm. Ed.), 519, Section 3327. Thus, when reviewing the evidence involved in a boundary dispute, courts should first consider natural and permanent monuments. Natural boundaries are next to be considered, followed by artificial marks, adjacent boundaries, course and distance, with course controlling distance. Area is the least important consideration. Id. See, also, Owens v. Haunert (2000),137 Ohio App.3d 507, 515, 739 N.E.2d 5, 10; 2 Ohio Jurisprudence 3d, Adjoining Landowners, Section 70.
 {¶ 18} Here, the Buggs' two surveyors testified that the stone is not a monument and they did not rely on it. Rather, they used course and distance to establish the line. They testified that to consider the stone a monument would produce an absurd result because it would create a property line in which Fancher would own a creek located outside of her fence line. Furthermore, there was some concern that the stone may have been dislocated from its original location. Thus, the surveyors concluded that the proper boundary line followed the fence line. *Page 8 
 {¶ 19} After considering the evidence, the trial court adopted the survey presented by the Buggs as the actual boundary line. While tangible landmarks generally prevail over courses and distances, the court is permitted to consider other evidence if it concludes the use of a landmark would create an absurd result or the landmark is less reliable than course and distance. The testimony of the Buggs' surveyors and Juillerat's support the court's decision to ignore the monument that Fancher's survey embraced. Thus, the court did not apply an incorrect legal standard in reaching its decision. We overrule Fancher's second assignment of error.
 JUDGMENT AFFIRMED. *Page 9 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
McFarland, P.J. Abele, J.: Concur in Judgment and Opinion. *Page 1